UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD H. KERNAN, <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, <br> Defendant. | Case No. 16-cv-02923-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 16, 19 |

Plaintiff Richard Howard Kernan ("Plaintiff") seeks social security disability benefits for his joint disease, diabetes mellitus II, hypertension and obesity. Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("Commissioner"), denying his benefits claim. Now before the Court is Plaintiff's motion for summary judgment or remand and Defendant's cross-motion for summary judgment.[1] (Dkt. Nos. 16 & 19.) Because the Administrative Law Judge ("ALJ") improperly weighed the medical opinion evidence by relying on a medical expert who in turn relied on an examining physician to whom the ALJ gave no weight, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.[2]

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017 and is therefore substituted for Carolyn Colvin as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d). This Order refers to Berryhill as the "Commissioner."

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), to conduct all further proceedings in this case, including entry of final judgment (Dkt. Nos. 8 & 12.)

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment(s) must be severe enough that the claimant is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his "past relevant work;" and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL BACKGROUND

On November 14, 2011, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. (Administrative Record ("AR") 10.) Later that month, Plaintiff submitted a Title XVI application for Supplemental Security Income ("SSI"). (*Id*.) In both applications, the Plaintiff alleged that his disability began June 14, 2001. (*Id*.)

The Social Security Administration denied Plaintiff's application on March 29, 2012 and upon reconsideration on October 23, 2012. (AR 79-100; 101-124.) Plaintiff requested a hearing before an ALJ in January of 2013. (AR 152.) Plaintiff amended the alleged onset date for his disability to March 1, 2010. (AR 32.) On October 24, 2013, an ALJ held a hearing at which Plaintiff and a vocational expert testified; the hearing was continued to allow Plaintiff and his

representative to submit additional medical evidence. (AR 10.) The ALJ held its second hearing on June 5, 2014. (*Id.*) On December 8, 2014, the ALJ issued a decision denying Plaintiff's application, finding that Plaintiff was not disabled as defined by the Social Security Administration. (AR 11.) Thereafter, the Appeals Council denied review, making the ALJ's decision final. (AR 1-4.) Plaintiff commenced this action for judicial review on June 1, 2016 pursuant to 42 U.S.C. § 405(g). The parties' cross-motions for summary judgment are now pending before the Court. (Dkt. Nos. 16 & 19.)

## FACTUAL BACKGROUND

Plaintiff was born on November 20, 1953. (AR 79.) He is a high school graduate. (AR 300.) Plaintiff worked as a preschool teacher from 2000 through 2007 and as an in-home health attendant from 2001 to 2003. (AR 301.) Plaintiff was living in a house with friends at the time he filed his application for disability benefits. (AR 316.)

### I. Medical History and Evaluations

Plaintiff has seen a variety of medical professionals in connection with his conditions. A discussion of the relevant medical evidence follows.

#### A. Medical History

##### 1. *Prior to March 1, 2010*

In 2008, Plaintiff was diagnosed with diabetes mellitus II, hypertension, and arthritis. (AR 340.) That year, Plaintiff sought treatment at Contra Costa Health Services after he moved to the Bay Area. (AR 373, 588.)

##### 2. *After March 1, 2010*

Dr. Alan Siegel at Contra Costa Health Services found that Plaintiff "has shoulder limitations with decreased abduction, difficult to lift objects > 25 lbs." in July of 2012. (AR 457.) Dr. Siegel also noted that Plaintiff was "unable to stand longer than several hours" and "unable to sit longer than 3 hours without difficulty, then needs to stretch because back becomes stiff." (*Id.*) Dr. Siegel prescribed Plaintiff a variety of medications for his hypertension, diabetes, and pain. (AR 323.)

Dr. Siegel referred Plaintiff to a physical therapist for his shoulder pain. (*Id*.) Plaintiff saw the physical therapist multiple times in August of 2012 but reported that he was not able to do some of his assigned exercises because of pain. (AR 458-459, 461.)

In February of 2012, Dr. Brad M. Piatt wrote in a diagnostic radiology consultation report that Plaintiff exhibited "multilevel disc and facet degeneration, particularly at L5-S1," as well as "mild chronic L1 anterior wedging suggesting slight compression deformity." (AR 431.) In another radiology report from April of that year, Dr. R. Mason Coleman wrote that Plaintiff exhibited "moderate degenerative spondylosis" in his lumbar spine as well as "moderate degenerative arthritis" in Plaintiff's left shoulder joint. (AR 467-468.)

In July of 2013, a nurse practitioner at the West County Health Center reported that Plaintiff's pain in his right hip was "worse with ambulation." (AR 506.) Plaintiff reported that he could not walk for more than 15 minutes before he began to experience severe pain in his right hip. (*Id*.)

### B. Medical Evaluations

Plaintiff underwent several examinations to determine his functional capacity in support of his application for disability benefits. Below is a summary of these evaluations.

#### *1. Non-Examining Medical Expert Dr. Malcolm A. Brahms*

Dr. Brahms, an orthopedic surgeon, evaluated Plaintiff's ability to do work-related activities in July of 2014. (AR 608-617.) Dr. Brahms found that Plaintiff was not able to lift or carry more than 21 pounds and could occasionally lift between 11 and 20 pounds. (AR 608.) Plaintiff could stand for 2 hours and walk for 1 hour in the course of an 8-hour workday. (AR 609.) In addition, Dr. Brahms found that Plaintiff could occasionally reach his right hand overhead but could not reach his left hand overhead. (AR 610.) The above limitations had lasted or would last for 12 consecutive months. (AR 613.) Dr. Brahms concluded that Plaintiff could do a range of sedentary work, after finding evidence of "an impingement condition of the left shoulder and changes of the AC joint," and "early arthritic change of the right hip and the lumbo-sacral joint." (AR 616.)

### *2. Examining Physician Dr. Frank Chen[3]*

Dr. Frank Chen performed an evaluation of Plaintiff at the request of the Agency in March 2012. (AR 432.) Before talking to Plaintiff, Dr. Chen reviewed the Adult Disability Report. (*Id.*) Dr. Chen wrote in his evaluation that Plaintiff has had hypertension since 2001, which he controls with medication. (*Id.*) Plaintiff also exhibited symptoms of low back pain for about 13 years. (*Id.*) X-rays of Plaintiff's lumbar spine showed possible degenerative disease. (*Id.*) Plaintiff told Dr. Chen that he could cook, do housework and buy groceries, as well as read, walk, and drive. (*Id.*) At the time of Dr. Chen's evaluation, Plaintiff was taking Metformin, glyburide, Lisinopril, aspirin, Vicodin and Flexoril for his various health issues. (*Id.*)

Dr. Chen diagnosed Plaintiff with Type 2 Diabetes, hypertension, obesity, and chronic low back pain "due to possible degenerative joint disease of the lumbar spine." (AR 433.) Dr. Chen's functional assessment was that Plaintiff could stand, walk and sit for six hours in an eight-hour workday. (*Id.*) Dr. Chen found that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. (*Id.*)

### *3. Non-Examining Medical Expert Dr. S. Amon*

In October of 2012, Dr. Sharon Amon, M.D., reviewed Plaintiff's medical records and found that he had three medically determinable impairments: DDD (disorders of back-discogenic and degenerative), diabetes, and hypertension. (AR 107.) Dr. Amon found Plaintiff's statements about his symptoms partially credible given the totality of the medical and non-medical evidence in the record. (*Id.*) However, Dr. Amon wrote that Plaintiff's "functional limitation and degree of impairment of his condition is not fully supported by the objective MER." (AR 108.) In the section on how she weighed the opinion evidence in Plaintiff's record, Dr. Amon wrote that she agreed with Dr. Chen's medical source statement. (*Id.*) In the residual functional capacity section, Dr. Amon wrote that Plaintiff was occasionally able to lift and/or carry 50 pounds and frequently able to lift and/or carry 25 pounds. (*Id.*) Dr. Amon also found that Plaintiff was able to

---

[3] Dr. Chen was removed from the DDS panel in December 2013 due to his "unprofessional manner and failure to adequately correct deficiencies in his CE reports." (AR 16.) Thus, the ALJ found that Dr. Chen's opinion was entitled to "no weight." (*Id.*)

5

stand, sit and/or walk 6 hours in an 8-hour workday, although she opined that Plaintiff was "limited" in his ability to reach overhead. (*Id.*) Drawing on Plaintiff's medical history, Dr. Amon concluded that Plaintiff was able to do medium work. (AR 110.)

### 4. Residual Functioning Capacity Assessment by Linda B. Stevens, PT, MS

On March 20, 2012, Linda B. Stevens, a rehabilitation physical therapist, conducted a functional capacity evaluation of Plaintiff's general functional capabilities. (AR 475-488.) Stevens concluded that Plaintiff was able to do "sedentary or semi-sedentary work." (AR 475.) To reach this conclusion, Stevens found that Plaintiff could sit for 30 minutes while performing bilateral upper extremity fine motor activity, and the same for standing. (AR 479-480.) Plaintiff's maximum physical capacity for dynamic lifting was 70 pounds. (AR 479.) However, Plaintiff walked "with some difficulty" when carrying 50 pounds. (*Id.*) According to Stevens, Plaintiff "appear[ed] to have some difficulty with holding trunk fully erect," and "appear[ed] to hold left shoulder slightly lower than right." (AR 477.) Plaintiff was able to walk 600 feet and ascend and descend four flights of stairs. (AR 480.) Stevens concluded that Plaintiff "appear[ed] able to use trunk, upper extremities and lower extremities in a functional manner despite slight deficits in ROM and issues with chronic pain." (AR 477.) In addition, Plaintiff reported to Stevens that he was able to tie his shoes, grocery shop, cook and wash the dishes, assist with laundry and housekeeping, drive and do some gardening. (AR 476.)

## II. Plaintiff's ALJ Hearings

On October 24, 2013, Plaintiff appeared at his initial hearing before ALJ Major Williams, Jr., in person, represented by counsel. During this hearing, Plaintiff and vocational expert Mary Sideo testified. (AR 29-70.) The ALJ conducted a supplemental hearing on June 5, 2014, to permit Plaintiff to present additional medical evidence. (AR 71-78.)

### A. October 24, 2013 ALJ Hearing

#### 1. Plaintiff's Testimony

At the time of the hearing, Plaintiff was 6 feet, 4 inches and weighed 270 pounds. (AR 37.) He was living at a friend's house, where he did not have to climb any stairs. (*Id.*) He graduated from high school and obtained preschool teaching qualifications. (AR 38.)

6

While working in preschools, Plaintiff did arts and crafts with the children, transported them, supervised their play and set up activities. (AR 39.) He occasionally had to lift children in and out of their school bus. (AR 40.) However, Plaintiff's back pain prevented him from completing a full work day as of March 1, 2010, because of "weight limitations in the preschool where you may occasionally have to lift children." (AR 41.)

Plaintiff previously worked as a caregiver who "prepared meals, did laundry, washed dishes, supplied medications, and transported back and forth to medical appointments." (AR 39.) He was unable to continue with that job because lifting was too painful for him; he claimed he could not lift more than 50 pounds. (*Id*.)

Other activities, such as mowing the lawn, carrying groceries from his car, and lifting laundry baskets, aggravated Plaintiff's back pain. (AR 42.) If he lifted things that were too heavy, he would "pay for it with three days of bedrest." (*Id*.) Beginning in 2011, Plaintiff also had difficulty walking for an extended period because of arthritis in his hip joints. (*Id*.) Thus, "any movement caus[ed] the bone to rip and caus[ed] pain." (*Id*.) Plaintiff also could not sit for an extended period because of the strain sitting puts on his lower back. (AR 44.) Plaintiff testified that taking his prescribed medications did not ameliorate his back pain. (AR 45.) He was not able to sleep through the night because of his pain. (AR 51-52.) "[A]ny kind of physical exertion would cause him to have to lie down." (AR 51.) He would rest lying down anywhere from an hour and a half to three hours every day. (*Id.*)

Plaintiff noticed that he had less mobility in his shoulder around 2011. (AR 52.) He ceased physical therapy when it caused him more pain. (*Id*.)

At the time of the hearing, Plaintiff saw Dr. Alan Siegel at the West County Health Clinic regularly for treatment related to his diabetes. (AR 53.) Another doctor in that same office, Dr. Ayala, recently suggested that Plaintiff may need hip replacement surgery. (AR 53.) The ALJ remarked that he would "like to hear from Dr. Siegel . . . in terms of his residual functioning capacity." (AR 54.) The ALJ continued the hearing 30 days so that the Dr. Siegel could submit a statement regarding Plaintiff's residual functional capacity. (AR 68.)

### 2. **Vocational Expert's Testimony**

The ALJ nonetheless proceeded with the vocational expert Mary Sideo's testimony. (AR 55.) Sideo explained that Plaintiff's job as a home attendant required medium residual functioning capacity and his job as a preschool teacher required light residual functioning capacity. (AR 55.) Sideo testified that if Plaintiff could perform "a wide range of light work," this would eliminate his past in-home care position from the disability determination, but if Plaintiff could perform "a wide range of medium work," none of Plaintiff's past work would be eliminated from the analysis. (AR 56.)

The ALJ asked Sideo about jobs that Plaintiff "might be able to do with [his] reaching limitation in the medium category." (AR 64.) Sideo said Plaintiff could work as a hand packager or sandwich maker, which both require medium residual functioning capacity. (*Id*.) She said Plaintiff could still perform his previous work as a preschool teacher with his reaching limitation. (AR 65.)

### B. June 5, 2014 ALJ Hearing

The ALJ conducted a supplemental hearing on June 5, 2014, to permit medical expert Dr. Malcolm Brahms, an orthopedic doctor, to testify telephonically.[4] (AR 71-78.) However, Dr. Brahms had not reviewed Plaintiff's entire medical record, so the ALJ asked Dr. Brahms to answer interrogatories instead. (AR 75.) Dr. Brahms' submitted the answers to the interrogatories one month after the hearing, writing that Plaintiff's impairments did not meet or equal any impairment described in the listing of impairments (AR 615.) Dr. Brahms described Plaintiff as "a mild obese diabetic individual whose chief complaints include a dermatitis, foot problem, left shoulder and right hip." (AR 616.) In addition, Dr. Brahms wrote that there is evidence "of an impingement condition of the left shoulder and changes of the AC joint," as well as "evidence of early arthritic change of the right hip and the lumbo-sacral joint." (*Id*.) Dr. Brahms' opinion was that Plaintiff could engage in sedentary activity. (*Id*.) Dr. Siegel did not submit an RFC report.

---

[4] There was no discussion at this hearing as to why Dr. Siegel did not submit a functional capacity evaluation, and no functional capacity evaluation from Dr. Siegel appears in the record. Instead, Plaintiff submitted additional medical records detailing medical visits in April of 2014. (AR 600-607.)

8

### III. The ALJ's Findings

In a December 8, 2014 written decision, the ALJ found Plaintiff not disabled under Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act, taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 10-17.)

At the first step, the ALJ found that Plaintiff had not engaged in Substantial Gainful Activity since March 1, 2010; thus, disability was not precluded based on work activity. (AR 12.)

At the second step, the ALJ found that Plaintiff had six severe impairments: degenerative joint disease of the lumbar spine, degenerative joint disease of the left shoulder, mild degenerative joint disease of the right hip, diabetes mellitus II, hypertension and obesity. (*Id.*)

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) In making this finding, the ALJ considered Listing 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 9.00 (endocrine disorders). (*Id.*) The ALJ wrote that he considered all of the evidence, including Plaintiff's medical records. (*Id.*)

As a precursor to the fourth step, the ALJ determined Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c). (AR 13.) However, the ALJ found that Plaintiff's inability to reach his left arm above shoulder level compromised his ability to perform medium work. (*Id.*) In making this finding, the ALJ considered Plaintiff's symptoms and the extent to which they are consistent with the objective medical evidence and other evidence by adhering to a two-step process. (*Id.*) First, the ALJ determined whether Plaintiff had an underlying medically determinable physical or mental impairment(s) that could be reasonably expected to produce Plaintiff's pain or other symptoms; second, he evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit his functioning. (*Id.*) The ALJ found that Plaintiff had satisfied step one, as his medically determinable impairment could reasonably be expected to cause his alleged symptoms. (AR 14.) However, the ALJ found that Plaintiff's statements

regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (*Id.*)

In reaching this conclusion, the ALJ first focused on physical therapist Linda Stevens' March 2010 functional capacity evaluation. He noted that Stevens found that Plaintiff's musculoskeletal evaluation "indicated good to excellent strength and mostly full range of motion with some pain, with maximum physical capacity for dynamic lifting and carrying 70 pounds," and that Plaintiff "reported that he was capable of maintaining extensive activities of daily living, including tying shoes, going grocery shopping, doing some cooking, dishwashing, gardening, kids' activities, and driving," as well as doing some laundry and housekeeping. (*Id.*) Stevens also found that Plaintiff was able to sit for 30 minutes and stand for 30 minutes while performing bilateral upper extremity fine motor activity and was able to walk 600 feet on level ground, including ascending and descending four flights of stairs, with no need to sit and rest, but with slight shortness of breath after completing stair climbing. (*Id.*) The ALJ reported that Stevens concluded based on her evaluation that Plaintiff "appeared to be able to do sedentary or semi-sedentary work." (*Id.*)

The ALJ next examined Plaintiff's medical reports, noting that x-rays of his left shoulder from April 12, 2012 "indicate degenerative changes at the left AC and glenohumeral joints, with thinning of the subacromial space but without evidence of subacromial spur formation." (AR 14.) The ALJ noted that Plaintiff's x-rays of his hips "indicated mild degenerative joint changes of the right hip" and x-rays of his lumbar spine, which "indicated multilevel disc and facet degeneration, with moderately narrowed L5-S1 disc, mildly narrowed discs at L3-L5 and mild chronic L1 anterior wedging suggesting slight compression degeneration." (*Id.*)

Next, the ALJ analyzed reports from Plaintiff's physical therapists and doctors, including Dr. Siegel, to whom Plaintiff "reported difficulty lifting objects more than 25 pounds, standing longer than several hours, and unable to sit longer than 3 hours without difficulty." (AR 14.) Dr. Siegel's progress notes from July 24, 2012, "indicated reduced range of motion of the left shoulder." (*Id.*) However, the ALJ "found it telling" that "Dr. Sigel, the claimant's longstanding treating physician, did not provide a medical source statement, even after [he] requested it of the

10

1    claimant and his representative." (AR 16.)  The ALJ pointed to physical therapist Teresa

2    Schreeder's comment in August of 2012 that Plaintiff "d[id] not want to hear any recommendation

3    very vested in his disability status." (AR 14.)  The ALJ later concluded that "there is little to

4    substantiate the claimant's allegations of serious debilitation and pain" by looking at his x-rays

5    "indicating moderate degenerative changes at the L5-S1 level." (AR 15.)  The ALJ next compared

6    the findings of Dr. Amon, who concluded that Plaintiff was capable of medium work, with Dr.

7    Brahms, who concluded Plaintiff "is limited to a range of sedentary work." (AR 14-15.)  Dr.

8    Amon's assessment was from October of 2012 while Dr. Brahms' assessment was from July of

9    2014. (*Id*.)  The ALJ accorded Dr. Amon's "more contemporaneous" assessment "great weight

10   because it is closer to the date the claimant filed his applications." (*Id*.)  The ALJ found Dr.

11   Amon's assessment "consistent with the preponderance of the longitudinal medical evidence of

12   record as a whole." (*Id*.)  In contrast, the ALJ found that Dr. Brahms' assessment "cannot be

13   'related back' to the claimant's date last insured of March 31, 2010, on the Title 2 claim, or his

14   filing date on the T16 claim, November 30, 2011.  Dr. Brahms specifically limited his findings to

15   current limitations as of July 10, 2014." (AR 15.)  The ALJ accorded Dr. Frank Chen's opinion

16   "no weight" as Dr. Chen was removed from the DDS panel in 2013. (AR 16.)

17          The ALJ also accorded Stevens' assessment that Plaintiff could perform sedentary work

18   "less weight" because it was inconsistent with Plaintiff's test results. (*Id*.)  The ALJ concluded

19   that Plaintiff "had full strength and full range of motion, with some pain, and reported extensive

20   activities of daily living."  The ALJ also noted that Stevens "is not an acceptable medical source."

21   (AR 16.)

22          After evaluating the above evidence, the ALJ concluded that Plaintiff's allegations of

23   complete debilitation were "not generally credible" because they were "inconsistent with the

24   preponderance of the medical evidence of record, which indicates generally benign findings."

25   (*Id*.)  The ALJ also found that Plaintiff "was noncompliant and uncooperative with his exercise

26   regimen, ostensibly because he wanted to appear more limited physically, as his therapist

27   reported." (*Id*.)  To the contrary, the ALJ found that Plaintiff "appears to be capable of extensive

28   activities of daily living, including performing household chores and mowing the lawn and

1   driving." (*Id.*)

2   Finally, the ALJ turned to step four, which addresses whether Plaintiff is able to perform any of his past relevant work. (*Id.*) The ALJ found that Plaintiff was capable of performing his past work as a preschool teacher, which would not require the performance of work-related activities precluded by Plaintiff's RFC as it would involve only light exertion. (*Id.*) The ALJ accepted the vocational expert's testimony that an individual with Plaintiff's RFC could perform the preschool job. (*Id.*) At step five the ALJ therefore concluded that the Plaintiff was not disabled under the Social Security Act. (AR 17.)

### IV.     Appeals Council

Plaintiff filed a request for review on February 2, 2015. (AR 5-6.) The Appeals Council denied Plaintiff's appeal on March 30, 2016, concluding there was no reason to review the ALJ's decision. (AR 1-2.) The Appeals Council's decision rendered the ALJ's opinion final.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ's decision to deny benefits. When exercising this authority, however, the "Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is "more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (internal citations and quotation marks omitted). To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted).

The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, the ALJ's "findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations

and quotation marks omitted); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). "The court may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039. "It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the Commissioner's determination as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 08-CV-00147-BAK, 2009 WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009). Similarly, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court can only affirm the ALJ's findings based on reasoning that the ALJ herself asserted. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Therefore, the Court's consideration is limited to "the grounds articulated by the agency[.]" *Cequerra v. Sec'y*, 933 F.2d 735, 738 (9th Cir. 1991).

## DISCUSSION

Plaintiff contends that the ALJ erred as a matter of law by improperly weighing the medical opinion evidence and urges the Court to grant summary judgment and remand to the Agency for further proceedings.

### I.  The ALJ's Consideration of the Medical Opinion Evidence

#### A. Legal Standard

The Social Security Administration's disability determination "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn*, 495 F.3d at 630 (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is "more than a mere scintilla, but may be less than a preponderance." *Molina*, 674 F.3d at 1110-11 (internal citations and quotation marks omitted).

#### B. Analysis

The ALJ's weighing of the medical opinion evidence in concluding that Plaintiff was able to perform medium work was not "supported by substantial evidence." *Orn*, 495 F.3d at 630 (internal citations omitted).

13

### *1. Non-Examining Medical Expert Dr. Amon*

The ALJ erred in according "great weight" to Dr. Amon's opinion that Plaintiff could perform a range of medium work. (AR 110.) In his decision, the ALJ wrote "I rely on Dr. Amon's more contemporaneous assessment of October 23, 2012. I accord [Dr. Amon's] opinion great weight because it is closer to the date the claimant filed his applications [than Dr. Brahms' opinion]." (AR 15.) The ALJ also wrote that Dr. Amon's opinion was "consistent with the preponderance of the longitudinal medical evidence of record as a whole." (*Id*.) But the only source of evidence in the section of Dr. Amon's report dedicated to the "weighing of opinion evidence" was examining State Agency physician Dr. Frank Chen's medical source statement. (AR 108.) Dr. Chen was removed from the DDS panel in December 2013 due to the thoroughness of his examinations and quality of his reports, among other issues. (AR 16.) The ALJ wrote that Dr. Chen's removal from the DDS panel "raise[d] questions about the thoroughness of his exams and the adequacy of his reports." (*Id*.) He thus assigned Dr. Chen's opinion no weight, noting that Dr. Chen was subject to a "Corrective Action" letter issued by Disability Determination Services ("DDS") at the time that Dr. Chen examined Plaintiff and concluded Plaintiff had the residual functioning capacity to do medium work. (*Compare* AR 108 *with* AR 16.) The ALJ, however, did not acknowledge that Dr. Amon wrote that she agreed with Dr. Chen's report. (AR 108.) Dr. Amon, like Dr. Chen, found that Plaintiff could stand and/or walk for 6 hours in an 8-hour work day, could frequently lift 25 pounds and could occasionally lift 50 pounds. (*Id*.) As Dr. Amon did not examine Plaintiff, it is unclear what parts of Dr. Amon's assessment are based on Dr. Chen's previous analysis and what is based on her review of other records. Thus, the discrediting of Dr. Chen's examination and report challenges the substantiality of the evidence supporting Dr. Amon's finding.

The Court cannot conclude that substantial evidence nonetheless supports the ALJ's finding that Plaintiff could perform medium work because he did not explain what weight he placed on other aspects of the record, like Plaintiff's medical progress reports, x-rays and reports of his activities of daily living shared during his functional capacity evaluation. (AR 14-15.) Instead, he explained he placed "great weight" on Dr. Amon's opinion. The Court is constrained

14

by this reasoning. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

As the ALJ placed "great weight" on Dr. Amon's opinion, and as Dr. Amon relied on Dr. Chen's discredited opinion, substantial evidence does not support the ALJ's determination that Plaintiff could perform medium work. Thus, remand is required for further development of the record regarding Plaintiff's residual functioning capacity. In addition, while Dr. Brahms did specify that he was opining as to Plaintiff's current restrictions (at the time of his review), the ALJ should provide an explanation for his assertion that Dr. Brahms' opinion that Plaintiff is limited to a range of sedentary work "cannot be 'related back'" to Plaintiff's date last insured for his Title II claim or his filing date for his Title XVI claim, and explain what weight, if any, he would assign Dr. Brahms' opinion. A medical expert's opinion as to current restrictions may have some relevance as to past limitations depending on the nature of physical limitations. *See Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988) ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition").

### *2. Physical Therapist Linda B. Stevens*

The ALJ assigned Stevens' opinion "less weight" because she is not an "acceptable medical source" as a physical therapist and because he found her opinion "inconsistent with the test results." (AR 15-16.)

Only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Physical therapists are defined as "other sources," § 404.1513(d), and are not entitled to the same level of deference, *see* § 404.1527; SSR 06–03p. The ALJ may discount opinions or testimony from these "other sources" if the ALJ "gives reasons germane to each witness for doing so." *See Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (internal citations omitted).

Plaintiff argues that "the Agency's rules unambiguously state that a nonacceptable medical source's opinion can be given more weight than that of an acceptable source." (Dkt. No. 16 at

20.[5]) However, the source Plaintiff cites reads "the views of 'other' medical sources may outweigh the views of an acceptable medical source . . . For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." SSR 06–03p.

Here, Stevens only saw Plaintiff once to conduct a functioning capacity evaluation; she did not see him "more often" than any treating source. Moreover, the ALJ offered "reasons germane" to Stevens' opinion to reject it. *See Turner*, 613 F.3d at 1224. The ALJ cited Plaintiff's performance during Stevens' evaluation, finding that this performance was inconsistent with Stevens' RFC finding that Plaintiff is capable of performing sedentary or semi-sedentary work. (AR 15.)

While reasonable minds could disagree as to whether Plaintiff's walking "with some difficulty" while carrying 50 pounds (AR 479) equates to an ability to lift this weight on a "regular and continuing basis" (SSR 96–08p), the ALJ offered reasons "germane" to Stevens' assessment that justify according it less weight. *See Turner*, 613 F.3d at 1224. Accordingly, the ALJ did not err in doing so. Remand is nonetheless required because of the ALJ's error in giving great weight to Dr. Amon's opinion despite Dr. Amon's reliance on the discredited Dr. Chen opinion.

## CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's motion for summary judgment (Dkt. No. 16), DENIES Defendant's cross-motion for summary judgment (Dkt. No. 19), and REMANDS for further proceedings consistent with this Order.

//
//
//
//
//
//
//
//

---

[5] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

16

This order disposes of Dkt. Nos. 16 and 19.

**IT IS SO ORDERED.**

Dated: July 31, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge